O
JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NATIONWIDE LEGAL, LLC,

                      Plaintiff,

      v.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

                    Defendant.

Case No.: 2:23-cv-00599-MEMF-MRW

**ORDER GRANTING MOTION TO DISMISS [ECF NO. 16]**

     Before the Court are a Motion to Dismiss filed by Defendant JPMorgan Chase Bank, National Association and a Request for Judicial Notice filed by Plaintiff Nationwide Legal, LLC. ECF Nos. 16, 23. For the reasons stated herein, the Court DENIES the Request for Judicial Notice (ECF No. 23) and GRANTS the Motion to Dismiss (ECF No. 16).

/ / /

/ / /

/ / /

/ / /

/ / /

1

1

**BACKGROUND**

2

**I. Factual Background[1]**

3

Plaintiff Nationwide Legal, LCC ("Nationwide") is an attorney support services company

4

based in Los Angeles, California. FAC ¶ 6. Defendant JPMorgan Chase Bank, National Association

5

("Chase") is a bank based in Ohio. *Id.* ¶ 1.

6

Nationwide regularly advances court filings fees and other similar fees on behalf of its

7

clients. *See id.* ¶ 8. To facilitate this, from at least 2010 until 2022, Nationwide maintained a "Client

8

Advance Account" with Chase. *See id.* ¶¶ 9, 10. During the time period relevant to this action,

9

Nationwide wrote approximately 3,000 to 4,000 checks per month that drew from this Client

10

Advance Account, totaling as much as $11,000,000 per year. *See id.* ¶ 11.

11

Nationwide used three types of checks with the Client Advance Account: (1) checks with the

12

payee line left blank to be written in; (2) checks with "Los Angeles Superior Court" pre-printed on

13

the payee line; and (3) checks with "Clerk of the Court/Registrar-Recorder/Sheriff/SOD" pre-printed

14

on the payee line. *See id.* ¶ 12. All three types of checks were identified as "NATIONWIDE LEGAL

15

LLC CLIENT ADVANCE FEE ACCOUNT." *Id.*

16

The only signatory authorized for the Client Advance Account was Nationwide employee

17

and third party Hooman Davoodi ("Davoodi"). *Id.* ¶ 16. Nationwide created a signature stamp with

18

Davoodi's signature, which was controlled by Nationwide employee and third party Kevin Sweet

19

("Sweet"). *Id.* Sweet pre-signed checks of all three types by stamping them, and, every day, put a

20

limited number of such checks in a locked closet in Nationwide's offices. *See id.* Accounting

21

personnel had access to this office. *See id.*

22

Third party Vanessa Saravia ("Saravia") was a Nationwide employee from 2016 to 2021 and

23

worked in the accounting department. *See id.* ¶ 23. Saravia was among the accounting personnel who

24

had access to the closet where Nationwide stored the stamped and pre-signed Client Advance

25

26

27

28

[1] Unless otherwise indicated, the following factual background is derived from Plaintiff Nationwide Legal, LLC's First Amended Complaint. ECF No. 15 ("FAC"). For the purposes of the Motions to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

Account checks. *See id.* ¶ 22. Saravia took pre-signed checks and misappropriated approximately $1.5 million from Nationwide for her benefit. *See id.* ¶ 25.

On December 21, 2028, Saravia and her husband, Hernan Saravia, opened multiple Chase bank accounts at a Chase branch in Downtown Los Angeles. *See id.* ¶¶ 28, 29. Saravia opened a "High School Checking" account for her daughter E.S. *See id.* ¶ 28. Saravia also opened a personal "Chase Total Checking" account and a savings account.[2]

From December 2018 until April 2021, Saravia took checks of all three types from the locked cabinet and duplicated them. *See id.* ¶ 31. The duplicated checks had control numbers matching those of legitimate checks from the cabinet. *See id.* Saravia deposited those checks into all three accounts described above and may have also deposited money into other accounts. *See id.* ¶ 33. First, from December 2018 until approximately August 2019, Saravia used the checks with the payee line blank (the first type) and handwrote her daughter's name or her husband's name into the payee line. *See id.* ¶¶ 32, 43. Later, from approximately September 2019 until January 2020, Savaria used the checks with recipients pre-printed on the payee line (the second and third types), crossed out the printed recipient, and handwrote either her daughter's name, her daughter's initials, or her husband's name. *See id.* ¶¶ 33, 44. These checks were deposited into the High School Checking Account or other accounts without endorsement. *See id.* ¶¶ 33, 44. Beginning in January 2020, Savaria ceased crossing out the original payee's name and simply added by hand her daughter's name, daughter's initials, or husband's name to the payee line. *See id.* ¶¶ 35, 45. From February 2020[3] onwards (until April 2021), Savaria exclusively used her daughter's initials or husband's initials on the payee line, not their full names. *See id.* ¶¶ 36, 45. Also starting in February 2020, Savaria used only checks with

---

[2] Nationwide is aware of the account numbers for E.S.'s account and for the Chase Total Checking Account. *See id.* ¶ 19. Nationwide is not aware of the account number for the savings account, but nevertheless alleges that it was created. *See id.*

[3] Nationwide's Sur-Reply states that Nationwide "claims liability only as to checks deposited commencing in early February, 2020" and does not seek to impose liability for any checks from January 2020 or earlier. *See* Sur-Reply at 2. The FAC was susceptible to a broader reading, but Nationwide's argument that its claims are limited is supported by portions of the FAC, including by a paragraph that differentiates the total amount misappropriated from the amount misappropriated after January 28, 2021. *See* FAC ¶ 67. Based on Nationwide's representation as to its theory of liability, the Court will analyze whether Nationwide has stated a claim for liability as to checks deposited in February 2020 or later.

"Los Angeles Superior Court" pre-printed on the payee line. *See id.* ¶¶ 36, 45. These checks were

deposited into the High School Checking Account or other accounts without endorsement. *See id.* ¶¶

36, 45.

Savaria would typically deposit many checks per month, and at times multiple per day. *See*

*id.* ¶¶ 37, 46. For example, in late August 2020, Savaria deposited into the High School Checking

Account four checks totaling approximately $6,000 on August 18, two checks totaling

approximately $3,000 on August 19, three checks totaling approximately $4,000 on August 24, and

four checks totaling approximately $6,000 on August 28. *See id.* From January 17, 2020, until March

16, 2021, Savaria deposited $356,075.07 into the High School Account. *See id.* ¶ 39. After

depositing money into the High School Account, Savaria transferred the money into the other

accounts. *See id.* ¶ 41. The pattern as to the other accounts was similar; for example, in August 2020,

Savaria deposited into the Chase Total Checking Account five checks totaling approximately $7,000

on August 17, four checks totaling approximately $6,000 on August 18, three checks totaling

approximately $4,000 on August 19, three checks totaling approximately $4,000 on August 24, and

two checks totaling approximately $3,000 on August 28. *See id.* ¶ 46. From January 15, 2020, until

April 13, 2021, Savaria deposited $396,060.00 into the Chase Total Checking account via checks

with her husband's initials. *See id.* ¶ 49.

Chase provided monthly bank statements to Nationwide regarding the Client Advance Fee

Account. *See id.* ¶¶ 17–22. These statements included the date paid, the check number, and the

amount. *See id.* ¶ 17, *see also* ECF No. 15-10 (example statement). The statements did not include

the checks themselves. *See* FAC ¶ 17, *see also* ECF No. 15-10. The checks were not listed in

chronological date order, and instead listed in check number order. *See* FAC ¶ 17, *see also* ECF No.

15-10.

On April 12, 2021, a Chase employee called Sweet to verify two checks from Nationwide's

Client Advance Fee Account. *See id.* ¶ 53. Sweet realized that the checks in question were duplicates

of other checks and did not appear to be advancing fees for Nationwide's clients as intended. *See id.*

¶ 54. The Chase employee told Sweet that an individual had sought to deposit the checks into an

account frozen by Chase, and that there were at least 25 other checks with the same pattern of

4

activity. *See id.* ¶ 55. Chase had frozen the Savaria's various accounts in March 2021. *See id.* ¶ 63. Nationwide assumes that Chase must have had knowledge of suspicious or fraudulent activity prior to freezing the accounts, and that Chase likely had such knowledge as of February 2021 or earlier. *See id.* ¶ 65.

Nationwide made a claim for reimbursement to Chase while also commencing its own internal investigation. *See id.* ¶¶ 56, 57. As of June 3, 2021, Sweet had identified 986 checks totaling approximately $1.3 million as part of the misappropriation and had communicated this to Chase. On June 16, 2021, Chase informed Nationwide via letter that Chase was denying Nationwide's claim and would not reimburse Nationwide's account on the purported basis that Nationwide "did not take the appropriate steps to protect [its] account from theft or unauthorized use. *See id.* ¶ 63; *see also* ECF No. 15-32 (the letter). On June 29, 2021, while Sweet was still investigating, Chase informed Nationwide that Chase would reimburse Nationwide $45,328.14 for checks from April 2021. *See* FAC ¶ 59, *see also* ECF No. 15-31. This number does not appear to match the actual amount deposited on the checks identified by Chase. *See* FAC ¶¶ 60, 61.

## II. **Procedural History**

Nationwide filed suit in this Court on January 26, 2023. ECF No. 1. Nationwide filed its FAC on May 26, 2023. *See* FAC. The FAC asserts three causes of action: (1) negligence; (2) violation of California Commercial Code § 4401 and Uniform Commercial Code § 4-401; and (3) breach of contract. *See id.*

Chase filed its Motion to Dismiss on June 9, 2023. ECF No. 16 ("Motion" or "Mot."). Nationwide filed an Opposition to the Motion on October 10, 2023. ECF No. 22 ("Opposition or "Opp'n"). Nationwide also filed a Request for Judicial Notice on October 10, 2023, along with three exhibits. ECF No. 23 ("RJN"); ECF Nos. 23-1–23-3. Chase filed a Reply in support of its Motion on October 20, 2023. ECF No. 24 ("Reply"). After filing an *ex parte* motion for leave to do, and receiving leave of the Court, Nationwide filed a Sur-Reply in Opposition to the Motion on November 8, 2023. ECF No. 31 ("Sur-Reply"); *see also* ECF Nos. 25, 26, 27, 28, 29, 30 (*Ex Parte* Motion, Opposition thereto, related documents, and Court's Order granting leave to file Sur-Reply). The Court held a hearing on the Motion on November 16, 2023.

**REQUEST FOR JUDICIAL NOTICE (ECF NO. 23)**

I.       **Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

II.      **Discussion**

Nationwide requests judicial notice of three decisions made by United States District Courts. *See* ECF Nos. 23-1–23-3. The Court finds that it is not necessary or appropriate to take judicial notice of these items, and therefore DENIES the Request for Judicial Notice.

First, it appears to the Court that Nationwide seeks judicial notice of these items so that the Court will consider the decisions for their precedential value. *See* RJN. But a Court need not take judicial notice of another court's decision in order to consider it for this purpose. Courts regularly cite to the decisions of other courts without taking judicial notice of the decisions. Although the decisions at issue here do not appear to be published and may not be accessible on certain legal databases, the Court is aware of no authority suggesting that these facts preclude the Court from considering the decisions. The decisions are not binding (as no decisions by United States District Courts are binding on this Court), but the Court may cite them as persuasive if the Court is so inclined.

Second, it would not be appropriate to instruct the jury in this action "to accept the noticed fact as conclusive," as would be required if the Court took judicial notice of these decisions. *See* Fed. R. Evid. 201(f). The facts in these decisions have no direct relevance to these actions. While the Court could in theory instruct the jury to accept the existence of these decisions in order for the jury to better understand the law, this would be confusing and highly unusual, and the Court will instead use jury instructions to teach the law to jurors if the action reaches that stage. So, although the existence of these decisions can be verified, and they therefore might superficially appear to qualify for judicial notice, the Court is strongly inclined against taking judicial notice of them.

Thus, because the Court may rely on the decisions as Nationwide hopes without taking Judicial Notice of them, and because taking judicial notice would pose other problems, the Request

1    for Judicial Notice (ECF No. 23) is DENIED AS MOOT. Nationwide may rest easy that the Court

2    nevertheless considered these decisions (as it would any other non-binding authority cited by a

3    party) in preparing this Order.

**MOTION TO DISMISS (ECF NO. 16)**

4

5    **I.    Applicable Law**

6        Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to

7    state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

8    dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

9    relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

10   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

11   pleads factual content that allows the court to draw the reasonable inference that the defendant is

12   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

13       The determination of whether a complaint satisfies the plausibility standard is a "context-

14   specific task that requires the reviewing court to draw on its judicial experience and common sense."

15   *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view

16   them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

17   2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to

18   accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

19   *Twombly*, 550 U.S. at 555).

20       As a general rule, leave to amend a dismissed complaint should be freely granted unless it is

21   clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St.*

22   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

23   **II.    Discussion**

24       For the reasons stated below, the Court finds that all of Nationwide's claims must be

25   dismissed. All of Nationwide's claims are barred by the statute of limitations.

26       California has a one-year statute of limitations for actions by "a depositor against a bank for

27   the payment of a forged or raised check, or a check that bears a forged or unauthorized

28   endorsement." Cal. Code Civ. Proc. § 340(c) ("Section 340(c)"). Chase argues that this bars all of

1   Nationwide's claims, given the nature of the allegations about the checks. *See* Mot. at 2–6.

2   Nationwide raises two arguments in opposition. *See* Opp'n at 14–24. First, Nationwide argues that

3   Section 340(c) does not apply to the checks at issue here, because they were properly signed and

4   deposited without endorsement, and thus bear neither a forged signature nor a forged or

5   unauthorized endorsement. *See id.* at 18. Second, Nationwide argues that Section 340(c) does not

6   apply to all the causes of action that Nationwide brings. *See id.* at 18.

7       The Court finds that the checks at issue here qualify as alleged forgeries such Section 340(c)

8   applies. The Court further finds that it applies to all of Nationwide's claims.

9       **A.  Section 340(c) applies to the checks at issue here.**

10      Section 340(c) applies to actions for "a forged or raised check, or a check that bears a forged

11  or unauthorized endorsement." *See* Cal. Code Civ. Proc. § 340(c). Here, there is no allegation that

12  any check bore a forged or unauthorized endorsement. *See* FAC. The question is whether adding

13  initials to the payee line of a pre-signed check, without crossing out the pre-printed payee name,

14  constituted a forgery. The Court finds that it does.

15      The Supreme Court of California has explained—with respect to Section 340(c)—"Any

16  material alteration of a writing with intent to defraud any one, so as to make the writing appear to be

17  different from what it was originally intended to be, is a forgery."[4] *Union Tool Co. v. Farmers &*

18  *Merchs. N.A.*, 218 P. 424, 429 (Cal. 1923). Although *Union Tool* is not a recent case, it has never

19  been overturned, and it is an opinion of the Supreme Court of California. The Court finds that *Union*

20  *Tool* is binding on the issue of what constitutes a forged check under Section 340(c). *See Arizona*

21  *Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995*)* ("When interpreting state law,

22  federal courts are bound by decisions of the state's highest court").

23

24

25

---

26  [4] *Union Tool* concerned a prior version of the statute. At the time *Union Tool* was decided, section 340(c)
    applied to, *inter alia*, "an action by a depositor against a bank for the payment of a forged or raised check."

27  *See Union Tool*, 192 Cal. at 50. It did not explicitly apply to "forgery of the indorsement," although the
    Supreme Court found that the fraudulent endorsements did constitute acts of forgery.  The statute now

28  explicitly covers fraudulent endorsements. *See id.*; Cal. Code Civ. Proc. § 340(c). Accordingly, the definition
    is still valid, particularly in this case.

1    With *Union Tool's* definition in mind, there is little doubt that the checks at issue here are

2  forged checks. Savaria "materially alter[ed]" the pre-printed and pre-signed checks in order to

3  defraud Chase into depositing the money into accounts she controlled. *See* FAC ¶¶ 36, 45; *Union*

4  *Tool*, 218 P. at 429. In doing so, she made the "writing[s] appear to be different from what [they]

5  [were] originally intended to be." *See* FAC ¶¶ 36, 45; *Union Tool*, 218 P. at 429. Through these

6  actions, she managed to deceive Chase into depositing the money as she hoped, in a different way

7  than Nationwide had intended when it prepared the checks. This was a forgery, and so Section

8  340(c) applies.

9    Nationwide cites no authority suggesting otherwise. Instead, Nationwide points to other

10  purported shortcomings in Chase's handling of these events. For example, Nationwide attempts to

11  frame the problem as being that the checks lacked endorsements and therefore should not have been

12  cashed. *See* Sur-Reply at 2. Nationwide cites sections of the uniform commercial code dictating

13  when checks may be cashed without endorsement and argues that these checks do not fall within

14  these excepted categories. *See id.* But the Court need not reach these questions. It is plain that this is

15  a suit based on a forged check, regardless of how one frames Chase's purported breaches of duty.

16  Such suits are covered by Section 340(c).

17    Nationwide also cites *Ulla Lundgren v. Bank of America*, a district court case which

18  considered somewhat similar issues, but is ultimately distinguishable.[5] *See* Opp'n at 17, citing

19  *Lundgren v. Bank of America, N.A.*, U.S. Dist. LEXIS 114334, *8 (N.D. Cal. 2011)). Lundgren

20  considered a fact pattern where an agent of an individual, authorized to write checks on that

21  individual's behalf, wrote checks to vendors for services never rendered and then cashed the checks

22  without endorsement to the agent's account. *See Lundgren*, 2011 U.S. Dist. LEXIS 114334 at *2–*4.

23

24  ---

[5] In its Reply, Chase asserts that *Lundgren* "never mentions or considers the *Union Tool* case." *See* Reply at 2

25  n.1. This is not correct, as counsel for Chase acknowledged at the hearing. *Lundgren* noted that the defendant
had cited *Union Tool* and other authorities, and then explained why these authorities (including *Union Tool*)

26  were "unavailing because these cases involved claims against payor banks for payment of checks on forged
signatures and endorsements, as opposed to claims for depositing checks with no endorsement." *Lundgren*,

27  2011 U.S. Dist. LEXIS 114334 at *6. Counsel explained that he reviewed a different case called *Lundgren*
concerning similar subject matter and confused the two.

28

1    The defendant argued that "forgery is defined to include checks deposited without endorsements."

2    *Id.* at *9. The Court disagreed, and held that Section 340(c) did not apply, because no authority

3    defined "unendorsed checks as forgeries." *See id.* at 10. *Lundgren* is not binding on this Court, but

4    even if it were, it is distinguishable. The Court's finding here is not that the checks were forgeries

5    because they were cashed without endorsement. Rather, the Court finds that the checks are forgeries

6    because they were originally prepared by Nationwide with a certain payee, and then altered by

7    Savaria to deceive banks into directing money to a different payee. *See* FAC ¶¶ 36, 45. There was no

8    similar fact in *Lundgren*—the checks in *Lundgren* were not altered after being initially written, and

9    while the agent did not have authority to write checks for services not rendered, the agent had

10   general authority to prepare checks. *See Lundgren*, 2011 U.S. Dist. LEXIS 114334 at *2–*4.

11   Nothing was forged. *See id.*

12        *Union Tool* compels the conclusion that the checks at issue here are "forged . . . check[s]" as

13   defined by Section 340(c), and no authority suggests otherwise.[6]

14        **B.  Section 340 applies to all causes of action brought here, including the negligence
15            claim.**

16        The typical statute of limitations in California for negligent injury to property is three years.

17   *See* Cal. Code Civ. P. § 338(c). Some authority suggests that Section 340(c) does not alter this

18   general rule and might not apply to a negligence suit. However, having reviewed the issue, the Court

19   finds that Section 340(c) applies to the negligence claim and all other causes of action brought here.

20        In interpreting statutes, California courts begin by "being careful to give the statute's words

21   their plain, commonsense meaning." *Kavanaugh v. W. Sonoma Cnty. Union High Sch. Dist.*, 62 P.3d

22   54, 59 (Cal. 2003). "If the language of the statute is not ambiguous, the plain meaning controls and

23   resort to extrinsic sources to determine the Legislature's intent is unnecessary." *Id.* Thus, if the plain

24

25
     _____

26   [6] In making this finding, the Court limited its analysis to the checks written from February 2021 onwards,
     which had initials added to the payee line without crossing out other information. *See* FAC ¶¶ 36, 45.
27   Nationwide explained in its Sur-Reply that these are the only checks that it believes can form a basis for
     liability. *See* Sur-Reply at 2. Limiting the analysis to these checks does not change the conclusion—Section
28   340(c) applies for the reasons described above.

1    meaning of this statute is clear, there is no need to examine legislative history or other extrinsic

2    sources.

3        A plain reading of Section 340(c) is that it applies to any "action . . . by a depositor against a

4    bank for the payment of a forged . . . check." The statute sets forth no limit to the applicability of the

5    provision and—in particular—does not limit its application to warranty theories versus negligence

6    theories.  Nevertheless, the Supreme Court of California considered the question and held, in a non-

7    binding opinion, that Section 340(c) specifically does *not* apply to negligence. *See Sun 'n Sand, Inc.*

8    *v. United California Bank*, 582 P.2d 920, 939 (Cal. 1978). The Court explained that while Section

9    340(c) applies to actions based on contractual warranties, the California Uniform Commercial Code,

10   and statutes, negligence actions implicate "[v]ery different considerations." *Id.* There is a strong

11   policy in favor of negligent tortfeasors compensating those they harm, and the *Sun 'n Sand* court

12   explained that the "rules governing negligence actions—including the normally applicable three-year

13   statute of limitations[]—should not be varied so as to diminish fault-based liability absent a clear and

14   specific legislative directive." *Id.* The court found that Section 340(c) was not sufficiently clear as to

15   override the typical negligence statute of limitations, and thus did not apply to negligence. *Id.*

16       However, *Sun 'n Sand* "is not precedential authority." *Roy Supply, Inc. v. Wells Fargo Bank*,

17   39 Cal. App. 4th 1051, 1067 (1995). The Supreme Court of California is typically seven justices, and

18   opinions must be joined by a majority to be binding. *See id.* (citing numerous authorities). *Sun 'n*

19   *Sand* was heard by only five justices, and only two joined the majority opinion. *See id.*; *see also*

20   *Sun 'n Sand*, 582 P.2d at 924. Thus, the Court is not bound by *Sun 'n Sand*.

21       At least one California appellate court has held that Section 340(c) applies to at least some

22   negligence actions, despite *Sun 'n Sand*. *See Roy Supply*, 39 Cal. App. 4th at 1065. The Court held as

23   such as part of a broader holding that the Commercial Code "preclude[s] recovery for negligent

24   payment of forged checks." *Id.* at 1058. The Court explained in detail the ways in which the

25   Commercial Code dictates when a check should be cashed, that the Commercial Code makes a bank

26   liable (regardless of whether it was negligent) for cashing a check with a forged signature, but that

27   the tradeoff for the liability is that a customer has a duty to promptly discovery and report fraud,

28   based on Section 340(c) and another statute that requires customers to review bank statements and

1  report issues. *See id.* at 1058–63. In making this holding, the court made clear its view that Section

2  340(c) applied to negligence actions. The Court is aware of no authority (except *Sun 'n Sand*)

3  suggesting otherwise.

4        At the hearing, Nationwide argued that *Roy Supply*'s holding was so narrow such that it

5  should not apply here. Nationwide noted that the *Roy Supply* court described Section 340(c) in

6  considering how to interpret another statute (Section 4406), and essentially argued that the

7  description of Section 340(c) was not binding. *See id.* at 1065 ("Section 4406 of the Commercial

8  Code is consistent with [the history of and interpretation of Section 340(c)"). Nevertheless, the Court

9  finds *Roy Supply*'s description of Section 340(c) highly persuasive. As the court wrote, where

10  Section 340(c) is applicable—that is, where an action is "by a depositor against a bank for the

11  payment of a forged or raised check"—Section 340(c) "bar[s] recovery regardless whether the bank

12  was negligent and it [can] not be defeated by artfully framing the pleadings." *Id.* Other portions of

13  *Roy Supply* also support the finding that Section 340(c) should apply to negligence. In discussing the

14  scope of Section 4406, the court explained that Section 4406 precludes certain actions that would

15  rely upon proving a forgery—"In essence, if a customer must prove a forgery in order to establish a

16  claim then the customer will not be able to establish the claim because he or she is precluded from

17  proving the forgery." *See id.* at 1066. The Court then explained some nuanced differences between

18  how Section 340(c) and Section 4406 would apply to such suits (with waiver rules differing, among

19  other differences). *See id.* at 1066 n.16. All of this discussion suggests that the general rules limiting

20  suits that rely on proving a forgery apply to *all* suits that would rely on proving a forgery, with no

21  carveout for suits pleaded as negligence. For these reasons, the Court reads *Roy Supply* as supporting

22  a finding that Section 340(c) applies to negligence actions. The Court need not reach the broader

23  question of whether a negligence claim based on cashing checks is fully precluded by the California

24  Commercial Code. The Court finds that to the extent such a claim may lie, it must be brought within

25  one year per Section 340(c)'s clear direction. *See id.*; *see also* Cal. Code Civ. Proc. § 340(c). Such a

26  claim is barred here, as Nationwide discovered the fraud in April of 2021 and filed suit in January

27  2023. *See* FAC. Section 340(c) by its texts applies to all actions based on forged checks, and both

28

*Roy Supply* and a plain reading of the statute suggest that this includes negligence actions. Thus, Nationwide's first cause of action for negligence is time-barred.

Section 340(c) also applies to the second cause of action, for violations of the California and Uniform Commercial Codes, and the third cause of action, for breach of contract. No authority suggests otherwise. Even *Sun 'n Sand* conceded that Section 340(c) applied to actions based on contractual warranties and the Commercial Code. *See Sun 'n Sand, Inc.*, 582 P.2d at 939.

Nationwide also argues that Chase's several different roles in this fact pattern—acting as both Nationwide's bank controlling accounting from which money was drawn, and as Savaria's bank that paid money to its customer—allow Nationwide to bypass Section 340(c). *See* Opp'n at 15. The Court finds that Section 340(c) is not so limited. A California appellate court considered the issue and held that where the writer of a check sues the bank that cashed the check, the bank that cashed the check may raise the same defenses that the writer's bank might have raised, including the same statute of limitations. *See Allied Concord Fin. Corp. v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 275 Cal. App. 2d 1, 1 (1969) ("the depositary bank in turn is entitled to the benefit of the performance of the drawer's statutory and contractual duties owed to the drawee bank to timely discover forged endorsements or suffer the charge against his account to stand"). No authority suggests otherwise. Nationwide cited to *Simi Management Corporation v. Bank of America, National Association*, which described Section 340(c) in general terms as applying to an action brought by "a depositor against a bank for the payment of a forged or raised check." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1093–94 (N.D. Cal. 2013). But *Simi* did not suggest that Section 340(c) would not apply if the writer of the check sued the bank that cashed it rather than the bank at which he or she had deposits. *See id.* Nor did the California case *Simi* cited. *See Chatsky & Assocs. v. Superior Ct.*, 117 Cal. App. 4th 873, 875 (2004) (holding that Section 340(c), rather than another statute limitations, "applies to claims by depositors against their bank for payment of forged checks written on the depositors' accounts"). No authority supports Nationwide's limited reading. The Court finds that Chase's position as both Nationwide's and Savaria's bank does not change the applicability of Section 340(c).

1    Thus, Section 340(c) applies to all of Nationwide's claim, and bars all such claims.[7] For this

2    reason, the action must be dismissed. Dismissal will be without leave to amend, as it does not appear

3    that any amendment would save these claims. *See Manzarek*, 519 F.3d at 1031.

4                                        **CONCLUSION**

5    For the reasons stated herein, Nationwide's Request for Judicial Notice (ECF No. 23) is

6    DENIED, and Chase's Motion to Dismiss (ECF No. 16) is GRANTED. All of Nationwide's claims

7    are dismissed without leave to amend.

8

9        IT IS SO ORDERED.

10

11    Dated: March 28, 2024                _____

12                                        MAAME EWUSI-MENSAH FRIMPONG

13                                        United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

28    [7] The Court need not reach the arguments made by Chase regarding a claim for conversion under the
      California Commercial Code.